UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 21-cv-3498

JOSE A. LUGO LUGO, SR.,

    Plaintiff,

v.

CARGILL MEAT SOLUTIONS CORPORATION,

    Defendant.

_____

## COMPLAINT
_____

    Jose A. Lugo Lugo, Sr. ("Mr. Lugo"), through counsel, state as follows for his Complaint against Cargill Meat Solutions Corporation ("Cargill" or "Defendant").

### JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

2. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. More specifically, this action arises from, *inter alia*:

    a. Discriminating against Mr. Lugo as a Jewish Black and/or Puerto Rican with respect to terms and conditions of employment, including but not limited to support and assistance, discipline, work environment, and termination;

    b. Discriminating against Mr. Lugo as a Jewish Black and/or Puerto Rican by creating, fostering, and/or tolerating a hostile work environment consisting of, but not

       limited to, racial names, insults, pervasive disrespect, and other hostile and discriminatory treatment; and

   c. Retaliating against Mr. Lugo who, while still employed at Cargill, internally complained about discrimination and harassment, which retaliation included, but was not limited to, his termination.

3. Venue is proper in this Court because the actions complained of occurred within the State of Colorado and Mr. Lugo was employed by Cargill in the State of Colorado.

4. Mr. Lugo timely filed his charges with the Equal Employment Opportunity Commission ("EEOC").

5. On October 1, 2021, the EEOC issued a Dismissal and Notice of Rights, and made no finding as to the merit of Mr. Lugo's charge.

## GENERAL ALLEGATIONS

6. Mr. Lugo incorporates paragraphs 1 through 5 as if set forth fully herein.

7. Mr. Lugo is a Sabbath-observant Black Jew from Puerto Rico and a member of a protected class based on his religion, race, and/or national origin.

8. Mr. Lugo was an employee at Cargill's meat processing facility located in Fort Morgan, Colorado, from on or about May 31, 2017, to December 29, 2017, July 16, 2018, to February 4, 2019, and November 4, 2019, to March 2, 2020.

9. Mr. Lugo began to experience harassment and discrimination in 2017. Mr. Lugo requested a reasonable religious accommodation to not work on the Sabbath, which is defined as applied to Sabbath-observant Jews just before sunset on Friday until after dark on the following Saturday. Mr. Lugo made the request of his then manager, Cooper Dusky, and supervisor, Rudy

Barreras. They sent Mr. Lugo to human resources supervisor Allen Puertas. Mr. Puertas told Mr. Lugo that to be able to have Saturday off, he would "have to earn it," or words to that effect. By doing so, Mr. Puertas, denied Mr. Lugo's religious accommodation request.

10. Weeks later, Mr. Puertas informed Mr. Lugo that Mr. Lugo could get Saturdays off depending on Mr. Dusky's decision. But Mr. Lugo did not receive any Saturdays off.

11. Mr. Lugo also complained about Mr. Puertas as well as another supervisor, Miguel Flores, for harassment and intimidation.

12. The harassment by Mr. Flores occurred on the "kill side" of Cargill. Mr. Lugo reported it to human resources manager Rheane Robinson, who told Mr. Lugo that Mr. Flores was sorry and to give Mr. Flores a second chance.

13. Mr. Lugo was then retaliated against for standing up for Reymundo Lugo, who experienced similar harassment and discrimination based on his national origin and/or race. For instance, Mr. Flores would not let Reymundo Lugo and Jose Lugo use the restroom. When Mr. Lugo opened a dispute against Mr. Flores, Plaintiff. Jose Lugo experienced retaliation.

14. In 2018, Mr. Jose Lugo was again harassed and intimidated based on his religion and race.

15. For instance, Mr. Barreras twice told Mr. Lugo in the lunch area that Jews do not believe in Jesus and are "going to Hell," or words to that effect.

16. Mr. Lugo also experienced sexual harassment in the workplace in 2018.

17. During his 2018 employment with Cargill, Mr. Lugo worked as a mechanic and twice requested to have Saturdays off so he could observe the Sabbath. Mr. Lugo's supervisor

then wrote him up when Mr. Lugo was absent on a Saturday, despite Mr. Lugo requesting it off for religious reasons.

18. Mr. Lugo's supervisor also told Mr. Lugo that he would be written up every Saturday "until I get you [Mr. Lugo] out."

19. Allan Puertas, Mark Phern, and Cecilia Drew, who were also employees at Cargill, all knew that Mr. Lugo made a religious accommodation request and experienced harassment. They were also, on information and belief, upset about Mr. Lugo making his religious accommodation request.

20. On information and belief, Superintendent Abdillahi Karim was pressured by others to suspend Mr. Lugo, including Cooper Dusky and Rudy Barrera, who requested that Plant Manager Cody Simmons instruct Mr. Karim to suspend Mr. Lugo in an apparent attempt to retaliate against Mr. Lugo's complaints to human resources concerning their conduct and Mr. Lugo's reasonable request for a religious accommodation. But Mr. Karim instructed Mr. Lugo to not sign the suspension paperwork because Mr. Lugo was being treated unfairly and was a great supervisor.

21. During this same time, when he was working as a mechanic, Mr. Lugo was also subjected to physical harassment, assault, and intimidation on an almost daily basis. One coworker, Juan Anguiano, complained that Mr. Lugo took his lunch at a different time from the rest of the second-shift mechanics. Mr. Lugo explained that he did that so he could pray and have space. Ms. Anguiano and Mr. Berrera and other members of the second-shift mechanics continued to harass and bully Mr. Lugo as a result.

4

22. In 2018, Mr. Lugo was also subject to sexual harassment by two mechanic coworkers, Aaron Hubs and James Schyde. Mr. Lugo reported the harassment to Cargill's Ethics Point website and also to Cargill's human resources department. The harassment was witnessed by two of Mr. Lugo's coworkers: Miko, who was from Ethiopia, and Michael, who was an Army reservist.

23. On or about November 4, 2019, Mr. Lugo was re-hired by Cargill as an electrical maintenance employee.

24. Prior to being hired to the electrical department, Cecilia Drew in Cargill's recruitment center told Mr. Lugo that if he could not work on Saturdays and Sundays, Mr. Lugo could not be hired in the electrical department.

25. After being hired, Mr. Lugo was told by Superintendent John Wittum that he instructed Ms. Drew to not hire people who could not work on Saturdays because he "did not need them," or similar words.

26. In or about November 2019, Mr. Lugo made a new religious accommodation request to have the Sabbath off.

27. Mr. Lugo was also referred to as the "Black Jew" and "nasty Jew" rather than by his name by coworkers Cooper Dusky, Ralph, Rudy Barreras, Patrick Buchanan, Aron Hubbs, Hilario Machin, and Jose Munoz. These comments were made on a regular basis while Mr. Lugo was on the floor throughout his 2019-2020 employment with Cargill.

28. Ralph Ritchey, one of Mr. Lugo's non-Black and non-Jewish coworkers, also bullied Mr. Lugo. One of the mechanics Mr. Lugo worked with in 2018, Miko, told Mr. Ritchey to stop bullying Mr. Lugo. After that, Mr. Ritchey started to refer to Mr. Lugo as "little friend" to

5

further demean and bully Mr. Lugo. Mr. Lugo's non-Black and non-Jewish coworkers started pursuing Mr. Lugo on a daily basis, provoked him, and refused to support his tasks. Another coworker, Rosa, advised Mr. Lugo to report the behavior to human resources.

29. The most frequent harassment and physical abuse was by Mr. Lugo's coworker Frank Herrera, who physically attacked Mr. Lugo on two occasions: once in front of Mr. Lugo's manager in December of 2019, and once in front of another coworker, Fernando Gausin, when Mr. Lugo was in the basement, on or about January 29, 2020.

30. Mr. Lugo reported both incidents to Mark Phern, but no action was taken by Mr. Phern. On information and belief, Superintendent Wittum imposed a three-day suspension of Mr. Herrera for physically accosting Mr. Lugo.

31. Mr. Lugo also reported both incidents to David Noletube, who helped Mr. Lugo change departments.

32. Unfortunately, that did not stop the harassment. On information and belief. Mr. Herrera's friends, Mr. Munoz and Mr. Machin, as well as other mechanics, convinced Mr. Herrera to continued harassing Mr. Lugo in an effort to get rid of him and to retaliate against Mr. Lugo for complaining about their behavior.

33. Mr. Herrera would also use other tactics to try to get Mr. Lugo to quit, such as unreasonably interfering with Mr. Lugo's ability to do his job and creating unsafe working conditions. For instance, Mr. Lugo was working with Mr. Herrera as an electrician where high-fall protection was needed. Mr. Lugo requested to use the necessary equipment, but Mr. Herrera refused. Mr. Lugo then informed his Supervisor, David Noletube, and shared with him a picture

of the risk. Mr. Noletube then informed Mr. Herrera that what he was not doing was not correct and explained why Mr. Lugo was not willing to help Mr. Herrera on many of their tasks.

34. In or around January 2020, Mr. Lugo complained to his direct supervisor, Mr. Noletube, about the continued harassment and derogatory name-calling.

35. After complaining to his supervisor, Mr. Lugo was physically pushed on two separate occasions by a non-Black, non-Jewish coworker, Mr. Herrera, who shared the same supervisor as Mr. Lugo. The last time that Mr. Herrera pushed Mr. Lugo was on or about January 29, 2020.

36. Because of the physical pushing, refusal to work safely with Mr. Lugo, and the continuation, if not escalation, of the racist and anti-Semitic comments that were made by Mr. Lugo's coworkers on a daily basis, which made Mr. Lugo feel like his life was at risk, he complained to Cargill's human resources department.

37. The derogatory comments and physical abuse contributed to the hostile work environment, of which Mr. Lugo's supervisors were aware because of Mr. Lugo's complaints. The hostile work environment described herein was continuous and persisted through the last day of Mr. Lugo's employment with Cargill.

38. While Mr. Lugo was able to complete his work, the verbal and physical abuse unreasonably interfered with his ability to perform his required tasks, such as the instance where Mr. Herrera refused to work safely with Mr. Lugo, as described in Paragraph 33 of this Complaint.

39. On information and belief, Mr. Herrera, the non-Black and non-Jewish coworker who physically accosted Mr. Lugo, received a short suspension.

40. On information and belief, before Cargill initiated its promised investigation into all of Mr. Lugo's complaints, a false complaint was lodged against Mr. Lugo. On information and belief, Mr. Puertas started investigating the allegations *against* Mr. Lugo.

41. One of the non-Black, non-Jewish coworkers who referred to Mr. Lugo as a Jew with derogatory intent and who harassed Mr. Lugo while Mr. Lugo was attempting to perform his job was Ralph Ritchey.

42. Sometime in February 2020, Mr. Lugo was promoted to Production Supervisor.

43. After Mr. Lugo was promoted to Production Supervisor, Ralph Ritchey's son, Zach Ritchey, filed a complaint with Cargill's human resources department on or about February 20, 2020, stating, "I was down in basement locker room bathroom usin [sic] bathroom when pulled from stall & was told not to fu"" with EE[.] Then my friend EE told me to file a report."

44. In his written statement, Mr. Ritchey stated that there was no injury, that he had no injuries to any part of his body, and that no one witnessed the injury.

45. While Cargill subsequently claimed that the "attack" was "violent," resulted in visible injuries, and was witnessed by a corroborating employee, none of those claims are found in Mr. Ritchey's contemporaneous written statement.

46. As a result of Mr. Ritchey's complaint, Cargill suspended and then terminated Mr. Lugo's employment, even though Mr. Lugo denied the allegations.

47. Mr. Lugo was terminated by Cargill on or about March 2, 2020.

48. Mr. Lugo requested support from his union following termination. His union representative Cory Wiks advised Mr. Lugo that he should quit and find work elsewhere.

49. On or about July 17, 2020, Mr. Lugo filed a complaint with the EEOC, which complaint is attached hereto and incorporated herein by reference.

## FIRST CLAIM FOR RELIEF
### [Discrimination Based on Race, National Origin, and/or Color]

50. Mr. Lugo incorporates paragraphs 1 through 49 as if set forth fully herein.

51. As Jewish, Black, and Puerto Rican, Mr. Lugo is a member of a protected class.

52. Mr. Lugo was qualified for and satisfactorily performed his job.

53. It was only after Mr. Lugo made complaints relating to harassment and discrimination that the allegation about Mr. Lugo "attacking" Mr. Ritchey arose.

54. When Mr. Lugo previously made complaints about being physically accosted on two separate occasions by a non-Black and non-Jewish coworker with the same supervisor as Mr. Lugo, and other employees witnessed it happen, and Mr. Lugo complained about it to his manager.

55. On information and belief, the non-Black, non-Jewish coworker was disciplined by receiving a short suspension.

56. Cargill's violence-in-the-workplace policy provided that the use of physical force with intent to cause bodily harm, and acts or threats in any form or manner that are intended to intimidate or cause fear of bodily harm could result in disciplinary action up to and including termination of employment.

57. Mr. Lugo has no history of violence in the workplace and was not in an altercation with Mr. Ritchey.

58. Yet, Mr. Lugo was terminated for the falsely alleged altercation with Mr. Ritchey.

59. On information and belief, such discriminatory discipline was improper, was in retaliation to Mr. Lugo's complaining about discrimination and harassment, and was calculated to provide a non-pretextual reason to terminate Mr. Lugo's employment.

60. On information and belief, Cargill's discrimination against Mr. Lugo was also motivated by Mr. Lugo's race, national origin, and/or color.

61. The unlawful employment practices complained of above were intentional.

62. Mr. Lugo suffered economic and other damages as a result of the discriminatory acts set forth herein.

## SECOND CLAIM FOR RELIEF
### [Discrimination Based on Religion, Religious Beliefs]

63. Mr. Lugo incorporates paragraphs 1 through 62 as if set forth fully herein.

64. As a Sabbath-observant Jew, Black, and Puerto Rican, Mr. Lugo is a member of a protected class.

65. Mr. Lugo was qualified for and satisfactorily performed his job.

66. It was only after Mr. Lugo made complaints relating to sexual harassment and religious discrimination that the allegation about Mr. Lugo "attacking" Mr. Ritchey arose.

67. When Mr. Lugo previously made complaints about being physically accosted on two separate occasions by a non-Black and non-Jewish coworker with the same supervisor as Mr. Lugo, and other employees witnessed it happen, and Mr. Lugo complained about it to his manager.

68. On information and belief, the non-Black, non-Jewish coworker was subject to the same standards governing performance evaluation and discipline as Mr. Lugo, and was disciplined by receiving a short suspension for physically pushing Mr. Lugo on two occasions.

69. Mr. Lugo has no history of violence in the workplace and was not in an altercation with Mr. Ritchey.

70. Yet, Mr. Lugo was terminated for the falsely alleged altercation with Mr. Ritchey.

71. On information and belief, such discriminatory discipline was improper, was in retaliation to Mr. Lugo's complaining about discrimination and harassment, and was calculated to provide a non-pretextual reason to terminate Mr. Lugo's employment.

72. On information and belief, Cargill's discrimination against Mr. Lugo was also motivated by Mr. Lugo's religion and request for religious accommodation.

73. The unlawful employment practices complained of above were intentional.

74. Mr. Lugo suffered economic and other damages as a result of the discriminatory acts set forth herein.

### THIRD CLAIM FOR RELIEF
### [Retaliation]

75. Mr. Lugo incorporates paragraphs 1 through 74 as if set forth fully herein.

76. Mr. Lugo complained to Cargill's human resources officers about being harassed and discriminated against based on his race, national origin, and religion, which is protected opposition to Title VII discrimination.

77. Mr. Lugo complained about the harassment and discrimination because he opposed what he reasonably and in good faith believed were unlawful, discriminatory employment practices based on religion, race, national origin, and/or color.

78. Cargill both suspended and terminated Mr. Lugo's employment, which are necessarily an adverse employment actions.

79. The rationale provided by Cargill for terminating Mr. Lugo, *viz.*, that he violently attacked another employee, was false.

80. On information and belief, Mr. Lugo's protected status was a determinative factor in the decision to terminate Mr. Lugo, which belief is based in part on the close temporal proximity of Mr. Lugo's complaints to his supervisors and Cargill's human resources department.

81. Terminating one's employment as a consequence of engaging in opposition to Title VII discrimination would dissuade any reasonable worker from making or supporting a charge of discrimination.

82. Cargill retaliated against Mr. Lugo with respect to both discipline and termination.

83. Mr. Lugo suffered from this retaliation within 300 days preceding the Charge of Discrimination he filed with the EEOC.

84. On information and belief, such discriminatory discipline was improper, was in retaliation to Mr. Lugo's complaining about discrimination and harassment, and was calculated to provide a non-pretextual reason to terminate Mr. Lugo's employment.

85. The unlawful employment practices complained of above were intentional and had the effect of depriving Mr. Lugo of equal employment opportunities, and otherwise adversely affected his status as an employee because he opposed practices made unlawful by Title VII.

86. Mr. Lugo suffered economic and other damages as a result of the retaliatory actions of Cargill.

### FOURTH CLAIM FOR RELIEF
### [Discrimination: Hostile Work Environment]

87. Mr. Lugo incorporates paragraphs 1 through 86 as if set forth fully herein.

88. Both supervisors and human resource officers at Cargill were made aware of Mr. Lugo's complaints about racist and anti-Semitic remarks, as well as the physical abuse experienced by Mr. Lugo.

89. Throughout his employment with Cargill, Mr. Lugo was subjected to a hostile work environment because of his race and/or religion.

90. Because the discriminatory remarks were made on a daily, continuing basis, the harassment was sufficiently severe or pervasive enough to alter the terms and conditions of Mr. Lugo's employment.

91. The combination of the physical aggression, unsafe working conditions, as well as the racist and anti-Semitic insults caused Mr. Lugo to feel threatened and created a work atmosphere that Mr. Lugo found to be intimidating, hostile, and offensive, and that a reasonable person would also find intimidating, hostile, and offensive.

92. By subjecting Mr. Lugo to a hostile work environment, Cargill discriminated against him with respect to the terms and conditions of his employment because of his race, color, national origin, and/or religion, including by singling out Mr. Lugo for discipline.

93. The patently racist and anti-Semitic remarks specifically targeted at Mr. Lugo stemmed from nothing other than discriminatory animus due to their very nature.

94. The unlawful employment practices complained of above were intentional.

95. Mr. Lugo suffered economic and other damages as a result of the hostile work environment to which Cargill subjected him.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Lugo respectfully requests that this Court grant them the following relief:

a. Back pay and actual damages in an amount to be shown at trial to compensate Mr. Lugo for lost wages, benefits, and employment opportunities;

b. Reasonable attorneys' fees and costs as allowed for pursuant to Title VII of the Civil Rights Act of 1964, as amended;

c. Front pay in an amount to be shown at trial and/or reinstatement;

d. Punitive damages, if applicable;

e. Emotional distress damages;

f. Pre- and post-judgment interest, as well as costs of this action together with reasonable expert witness fees as provide by law; and

g. Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff Jose Lugo respectfully requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted this 30th day of December, 2021.

LEVIN JACOBSON JAPHA, P.C.

*s/ Evan J. House*
David C. Japha, Esq.
Evan J. House, Esq.
Levin Jacobson Japha, P.C.
6000 East Evans Avenue
Building 1, Suite 210
Denver, Colorado 80222
(303) 504-4242

davidjapha@japhalaw.com
ehouse@ljjlaw.com

Plaintiff's Address:
c/o Levin Jacobson Japha, P.C.
6000 East Evans Avenue
Building 1, Suite 210
Denver, Colorado 80222

15